## Mutual Fire Ins. Co. of Annville, Plff. in Err., v. Daniel Wagner, for Use of Abram Rider.

One who has such direct pecuniary interest in a building that he will be damaged by the building's destruction has an insurable interest.

(Decided October 5, 1885.)

Error to the Common Pleas of Dauphin county to review a judgment on a verdict for plaintiff in an action on a policy of insurance. Affirmed.

On November 17, 1869, John Bacastow was ostensible owner of a piece of land and frame dwelling, holding them by a deed from the former owner, Jacob Corpman, which had been recorded. But Jacob Corpman held a private agreement of defeasance, so that Bacastow had, in reality, only an unrecorded mortgage title. He, however, contracted with Daniel Wagner

---

NOTE.—Any pecuniary interest in the property insured constitutes an insurable interest. It is sufficient if one have the legal title (Roberts v. Firemen's Ins. Co. 165 Pa. 55, 44 Am. St. Rep. 642, 30 Atl. 450) ; or the equitable title (Pennsylvania F. Ins. Co. v. Dougherty, 102 Pa. 568) ; or holds as trustee. Roberts v. Firemen's Ins. Co. 165 Pa. 55, 30 Atl. 450, 44 Am. St. Rep. 642. So, as in this case, the vendee, who has paid part of the purchase money, and become responsible for the balance, may recover when loss occurs. Millville Mut. F. Ins. Co. v. Wilgus, 88 Pa. 107 ; Imperial F. Ins. Co. v. Dunham, 117 Pa. 460, 12 Atl. 668, 2 Am. St. Rep. 686. This is true though the contract to sell be verbal (Keck v. Porter, 9 Kulp, 428) ; or if the payments be in instalments, the vendor having the right to retake possession upon failure of payments. Insurance Co. of N. A. v. Hannum, 1 Monaghan, 369.

As to insurable interest in property, or in the life of another, see the following editorial notes containing an exhaustive presentation of authorities on their respective subjects:

Insurable interest in unfinished building during its construction by contractor, note to Foley v. Manufacturers' & Builders' F. Ins. Co. 43 L. R. A. 664; how far an undivided interest in property is a complete or full ownership for the purposes of insurance, note to Beebe v. Ohio Farmers' Ins. Co. 18 L. R. A. 481; time when insurable interest must exist under fire policies, note to Sun Ins. Office v. Merz, 52 L. R. A. 330; insurable interest of wife in husband's life, note to Metropolitan L. Ins. Co. v. Smith, 53 L. R. A. 817; validity of life insurance for benefit of betrothed wife, note to Alexander v. Parker, 19 L. R. A. 187; insurable interest in life of parent, or child, or other relative by blood, note to Life Ins. Clearing Co. v. O'Neill, 54 L. R. A. 225; right to take life insurance for benefit of stranger, note to Heinlein v. Imperial L. Ins. Co. 25 L. R. A. 627.

to sell and convey the premises to him; and Wagner, in course of time, paid part of the purchase money, took possession, and obtained a policy of insurance upon the dwelling. Meantime Scott & Ballou, judgment creditors of Jacob Corpman, procured the property to be sold on execution to William S. Corpman, who, after the making of the policy, brought ejectment for the property. W. S. Corpman's title was sustained in this suit (4 W. N. C. 331); whereupon Bacastow purchased it from him. Thereafter, on April 21, 1873, Bacastow and Wagner entered into a new agreement in reference to the sale and conveyance of the property to Wagner.

Still later, in 1874, the building was burned, and this action was then brought upon the policy. The principal defense was that Wagner had no insurable interest in the building. Upon this topic the judge charged the jury as follows:

Charge. The second defense is that plaintiff had no insurable interest in this property, in the first place, at the time the insurance was taken, and, in the second place, at the time of the fire. If a man takes a policy of insurance on a property in which he has no interest, it is what the law calls a "wagering policy." It is a simple wager, and it is against the policy of the law to allow that to be done, and therefore if a man insures property that he does not own and has no interest in, the insurance contract is void, and he cannot recover upon it in case the property is burned. But a man, in order to have a right to insure, does not need to have the whole interest in the property; he does not need to have an absolute title; he does not need to have a clear deed. He may have what the law calls an equitable interest,—a right to have a deed on his paying the money he has agreed upon to pay to the person who holds the title, or he may have some other interest in it, different from that of the legal title. The general principle of law is that, if a man has an interest in the property,—a pecuniary interest,— and it would be a loss to him in case the property should be destroyed by fire, then he has an insurable interest. The fact, however, that the title of the insured to the property is defective or invalid will not deprive him of his insurable interest therein, if he is in the possession and use of the property under a bona fide claim of title, legal or equitable. "A man, under a claim of title which, if contested, might turn out not to be good, still

may have an insurable interest." The question to be determined is, whether this plaintiff had an insurable interest in this property, in the first place, at the time he made the insurance. Before that time he had entered into a contract or articles of agreement with John Bacastow, which is dated November 17, 1869, which agreement sets forth that Bacastow has sold this property to him, and that he has to pay for it the sum of $2,300. If this agreement was entered into between these parties as it purports upon its face, which has not been contradicted, and was in force at the time the insurance was effected, which was on July 5, 1870, the year following, then at that time the plaintiff had an insurable interest. If this agreement was entered into in good faith, and the plaintiff went into possession and bound himself, as he did, by the agreement, to pay this purchase money, he would then have an insurable interest. It would not depend upon the amount of purchase money he had paid at that time. If the agreement was entered into, it binds him to pay the purchase money, and gives him the right to have the deed when he does pay it. Indeed, on the full payment of it this itself would amount to a deed, for it declares that the property has been sold to him, and there is no peculiar form needed for a deed. The moment he had paid all the purchase money provided for in this deed he would own the property absolutely, and he would be responsible from the time he entered into possession under this agreement. If the property would burn it would be his loss, and, therefore, it is very clear that he would have an insurable interest in it.

But it is said that the title which Bacastow had was not good; That Bacastow was not in a condition to make a good title, and the records have been given in evidence to show that Bacastow's title was disputed, and it is contended that for that reason he had no insurable interest. He had an agreement with Bacastow conveying this property to him on the payment of this money, and he could hold Bacastow for that; and whether the title that Bacastow held and agreed to give under this agreement was an absolutely good title or not, would make no difference, and we instruct you that the evidence given on this point, *viz.:* the record of the suit in the Dauphin county court and in the supreme court, in which a suit was brought against Bacastow & Wagner by Scott & Ballou, is of no weight in this case,

and is not to be taken into consideration at all. It does not tend to prove that he had no insurable interest, and it is of no consequence whatever in the case; and, if you believe that this agreement.was entered into at its date, and believe, further, as was given in evidence, that Jacob Corpman had made a conveyance to Bacastow, at the same time, of this property, then he had an insurable interest at the time of its conveyance.

It is said, further, that, on April 21, 1873, another agreement was made between Bacastow and Wagner, which abrogated and annulled the original agreement; and that, as the fire did not occur until after that date, and this subsequent agreement did not give Wagner an interest in the property, therefore, at the time of the fire he had no insurable interest. If he had no insurable interest at the time of the fire he cannot recover.

We have been asked to leave to you the question whether this second agreement did or did not abrogate the first one; but we think it is not necessary for us to do so. We say to you that, if this second agreement was entered into between Bacastow and Wagner; if it related to the same property to which the first agreement referred; if it was followed up by the collection of the note taken on April 1, 1874, by Bacastow, from Wagner; and if it was followed up by the paper of April 7, 1874, certifying that Bacastow at that time had taken from Wagner a transfer of this policy, and that the money received upon it was to go towards the principal and interest of the land, which said Wagner had bought from him (Bacastow); and if it was followed up further by the direction from Bacastow, before he died, to those who were to become his executors, that they should make conveyance to Wagner on the payment of $500 more; and if that conveyance was so made,—we say that these facts, if you find them to be facts, taken in connection with this second agreement, are sufficient to show that at the time of the burning of the building Wagner had an insurable interest, and would show that that was the construction put upon this agreement by Wagner and Bacastow.

The second agreement recites that Wagner is in possession of this property; that if he paid $400 on April 1, 1874, he is to continue in possession; that if he continues to pay until he has paid $2,000, and the rent further agreed upon, then Bacastow is to convey the property to him; if, then, you find the

other facts, they show that the parties acted upon that arrangement, and that Bacastow made provision to have the property conveyed. These papers, if you find the other facts referred to, show that Wagner had an insurable interest at the date of the burning of the buildings, whether the first agreement was abrogated by the second or not. At the same time we say that we are not aware that there is any evidence in the case directly going to show that the first agreement was abrogated. There has been no evidence offered to show that it was given up or canceled or intended to be superseded. In its very form it is a conveyance vesting the equitable title in Wagner. There is nothing like a reconveyance or an agreement to reconvey or anything of that kind in any of these papers and, therefore, we are unable to see how it can be said that the first agreement was abrogated. The equitable title still remains, so far as the papers show, in Wagner, notwithstanding the second agreement to pay rent. Wagner says that that was the arrangement by which Bacastow might get more than 6 per cent interest without the law taking hold of it. It is for you to say whether that is so or not. We say that if you find these other facts which have been testified to, and about which there is not much, if any, controversy, he had an insurable interest also at the time when the property burned. .

*Josiah Funck & Son* and *Levi B. Alricks,* for plaintiff in error.—By the agreement of April 21, 1873, Wagner secures the possession of the property upon which the insured buildings were situated as tenant of Bacastow for the term of one year commencing April 1, 1873, at a money rental of $160 per annum, payable half yearly, with the option to purchase the property during the year if he can pay the purchase money in the manner therein provided. The purchase money is reduced to $2,000,—$300 less than the property was sold for under the agreement of November 17, 1869; and, instead of being payable in one sum, is called for in annual payments of $500 each. These articles of April 21, 1873, impose restrictions and enjoin duties upon the tenant entirely inconsistent with the idea that he should have any longer any ownership in the property itself beyond his rights as lessee of the premises. The agreement of November 17, 1869, which it supersedes, is a contract to sell; the time when the purchase money shall be paid is specified, and Wagner agrees to pay all expenses of conveyancing.

Evidently the parties met and made a settlement (Wagner abandoning the contract under which he was in possession), and entered into a new agreement by which Wagner secured the possession of the property with the option to purchase it at a less sum if he could raise the money to pay for it.

The terms of the agreement of April 21, 1873, are so utterly at variance with the preceding agreement as to cut it up by the roots; if you enforce the last agreement, there is nothing left upon which the first can operate, and the intention of the parties to annul the agreement of November 17, 1869, can be as plainly gathered from the face of the articles which followed it, as if it had been therein revoked and annulled in express terms.

If Wagner must stand upon his rights under the agreement of April 21, 1873, as we contend he must, it becomes important to determine what they were.

As purchaser of the property he had no insurable interest at the time of the fire, because he merely had the option to buy, and at that time he had not yet availed himself of that privilege.

How was he benefited by the preservation of the property, or subjected to loss by its destruction? This is the test by which an insurable interest may be determined. The option which he had to buy was not only a matter of intention, but of pecuniary ability; and, but for the destruction of the property by fire, he, in all probability, would never have secured it.

Surely, the chance which was given him to buy the property, coupled, as it was, with precedent conditions, was too remote and problematical an interest, or expectancy to be protected by a policy of insurance.

It is a recognized rule that almost any qualified property in the thing insured, or any reasonable expectation of profit, or advantage to spring from it, may be the subject of this species of contract, provided it be founded on some legal or equitable title. Marshall Ins. 5th Am. ed. 105.

The rule is valuable and well founded that he who has no interest has no insurance. That he must show his interest, and that it forms the entire measure of his recovery, are the corollaries of the rule. Without this, insurance would soon become a system of gambling. Sweeny v. Franklin F. Ins. Co. 20 Pa. 341.

Interest in the property insured is an essential link in the relation of insurance. It is, therefore, an incident of such a relation that it may be dissolved by the insured by parting with his interest. In mutual companies all the insured are members and all members are insured. He that sells his insured property excludes himself from membership and from all its liabilities thereafter accruing. He is no longer insurer or insured. Wilson v. Trumbull Mut. F. Ins. Co. 19 Pa. 374.

A judgment creditor for balance of purchase money due has no insurable interest on the real estate sold, and cannot recover on his policy issued to him on the property before the sale. Grevemeyer v. Southern Mut. F. Ins. Co. 62 Pa. 340, 1 Am. Rep. 420.

The lessees of a farm, who agreed in the lease that they would fodder the stock on the farm with the hay which should grow thereon, and that they would not sell, dispose of, or carry away, or suffer to be carried away, from the farm any of the hay without the consent of the lessors, gave a bill of sale to a third person, of hay grown on the farm after the making of the lease, and he took possession, intending to use it on the farm as provided by the lease. Held, that no title passed to him and he had no insurable interest. Heald v. Builders' Mut. F. Ins. Co, 111 Mass. 38.

The assured must have some interest in the subject of insurance; otherwise the policy is nothing more than a wager policy or bet, and therefore void. If any person might insure whether he has any interest or not, it would be a temptation to burn houses to receive the benefit of the policy. Flanders, Ins. 341.

Insurance of property is a contract of indemnity. The insurance company, for the consideration exacted, or, in case of a mutual company, for the liability assumed and entrance fees paid, agrees to save the assured harmless from loss by fire to the extent agreed upon, upon the buildings named in the policy.

In this case, Wagner had no interest to be indemnified against, for his relation to the property was such that he lost nothing by its destruction. His interest lay in realizing on the policy; that was a clear profit to him. When this is the case, the insurance is speculative; offers a temptation to the policy holder to burn the property, and is condemned by the law because dangerous to society.

In determining this question we look at his title to, or interest in, the property at the time of the fire. That is the decisive moment when his rights are measured by the law. Not by what he did afterwards or had done previously, before the agreement of April 21, 1873, had been entered into. If he had an insurable interest at the time of the fire, it would be most unreasonable to hold that anything he did subsequently might invalidate it; we can readily see the injustice of such a conclusion; *a fortiori* he cannot by subsequent conduct invest himself with an insurable interest, if he had none when the loss occurred.

If Wagner had no insurable interest as purchaser, as tenant he surely had none, because he had not insured his interest as such. Art. 1 of the by-laws provides "that a landlord may enter the buildings, a tenant the property contained therein." He had insured no contents; and as tenant he could not insure his leasehold interest even if he had intended doing so, which he did not, under these by-laws.

*Fleming & McCarrell* for defendant in error.

PER CURIAM:
We discover no sufficient cause for reversing this judgment. The jury has found that the plaintiff below did not burn the buildings. It is clear, under the authorities, that he had an insurable interest in the property. He had a direct pecuniary interest therein, so as to be damaged by its destruction. This constitutes an insurable interest. Strong v. Manufacturers' Ins. Co. 10 Pick. 40, 20 Am. Dec. 507; Wood, Ins. § 266; Williams v. Roger Williams Ins. Co. 107 Mass. 377, 9 Am. Rep. 41; Coursin v. Pennsylvania Ins. Co., 46 Pa. 323; Farmers' & M. Mut. Ins. Co. v. Meckes, 10 W. N. C. 306.

The case was well submitted.

Judgment affirmed.